**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-80397-BLOOM**

MARTAVIOUS CARN,

       Petitioner,

v.

STATE OF FLORIDA,

       Respondent.

_____/

<u>**ORDER DISMISSING 28 U.S.C. § 2254 PETITION AS TIME BARRED**</u>

     **THIS CAUSE** is before the Court on Petitioner Martavious Carn's *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. ECF No. [1]. Petitioner, a state prisoner, challenges his convictions and sentences in Case No. 15-CF-2879 in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. This Court has considered the Petition, the State's Response to the Order to Show Cause, ECF No. [13], Petitioner's Reply, ECF No. [22], and the state court record. After careful consideration, the Petition is dismissed as time barred.[1]

**I.    BACKGROUND**

     On March 30, 2015, Petitioner was charged by information with (1) attempted burglary while armed with a firearm and wearing a mask; (2) aggravated assault with a firearm while wearing a mask; and (3) shooting into a building. Resp't Ex. 3, ECF No. [15-1] at 21–23. Prior to trial, Petitioner moved to suppress the victim's positive identification of him at a photo lineup.

---

[1]   The dismissal of a section 2254 habeas petition as time-bared is with prejudice and is a merits adjudication for purposes of successiveness. *See Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1353 (11th Cir. 2007).

Resp't Ex. 10, *id.* at 43–46. The state trial court denied the motion following an evidentiary

hearing. *See* Suppression Hr'g Tr., ECF No. [16-3].

At trial, the State presented the following evidence, as summarized by the Fourth District

Court of Appeal ("Fourth DCA") in Petitioner's direct appeal:

> Late one night, the victim heard knocking on his front door. He
> approached the window near the door and asked who was there. The person at
> the door answered: "this is Mike." The victim turned on his porch light to see
> better. The person then asked him to open the door multiple times.
>     When the person turned toward the window, the victim could see his
> face clearly. He described him as a black male with a low haircut like a
> mohawk. He recognized the face but could not think of his name. The victim
> also saw a firearm.
>     He thought the person intended to rob or kill him. He immediately
> retreated from the window, went to the bedroom where his girlfriend was
> sleeping, woke her up, and they both hid under the bed. His girlfriend called
> 911 when they suddenly heard a round of shots go off.
>     At the scene, police collected shell casings as well as unused rounds,
> but no DNA connected the defendant to the crime. After the police left, the
> victim went on Facebook to see if he could find the shooter. When he found the
> person's photos on Facebook, he brought them to the police.

*Carn v. State*, 273 So.3d 39, 40–41 (4th DCA 2019). After the State rested, defense counsel

disclosed a video purportedly featuring Petitioner at a concert on the night of the crime in support

of Petitioner's alibi defense. *See* Trial Tr., ECF No. [16-4] at 146–152. The trial court sustained

the State's objection to the video due to its late disclosure but permitted Petitioner's alibi witness

to testify. *Id*. Petitioner also testified in his own defense. *Id*. at 133–45. The jury found Petitioner

guilty on all three counts but without the aggravator of wearing a mask on Counts 1 and 2. Resp't

Ex. 15, ECF No. [15-1] at 74 – 76.

Petitioner was sentenced to twenty years in state prison. Resp't Ex. 18, *id*. at 82–92. He

appealed, and on May 29, 2019, the Fourth DCA affirmed his convictions in a written opinion. *See*

*Carn*, 273 So.3d at 39.

On June 24, 2021, Petitioner filed his first motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Resp't Ex. 31, ECF No. [15-1] at 251–90. The trial court denied the motion. Resp't Ex. 33, ECF No. [15-2] at 27. Petitioner appealed, and the Fourth DCA affirmed, *per curiam*. *Carn v. State*, 367 So. 3d 1244 (4th DCA 2023). On August 7, 2023, Petitioner filed his second motion for post-conviction relief, styled as a "Motion for Newly Discovered Evidence pursuant to Fla. R. Crim. P. 3.850(b)(1)." Resp't Ex. 39, ECF No. [15-2] at 68–76. The trial court denied that motion. Resp't Ex. 42, *id*. at 95.

On March 28, 2024,[2] Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2254, raising four grounds for relief. ECF No. [1]. The State responded, arguing, *inter alia*, that the Petition is time barred. ECF No. [13]. Petitioner filed a Reply. ECF No. [22]. The matter is ripe for review.

## II.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for all federal habeas petitions.  *See* 28 U.S.C. § 2244(d)(1). Under the AEDPA, the limitations period shall run from the latest of—

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively

---

[2] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (quotation omitted). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Id*. The Petition is signed and dated March 28, 2024. ECF No. [1] at 38.

applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D). Here, the relevant provision is sub-section (A): Petitioner's one-year limitations period began to run on "the date on which [his] judgment became final by the conclusion of direct review." § 2244(d)(1)(A). Petitioner does not allege that the State created an unconstitutional impediment to filing the Petition, § 2244(d)(1)(B), his claims do not rely on a newly recognized right by the Supreme Court, § 2244(d)(1)(C), nor are they based on newly discovered facts, § 2244(d)(1)(D).

The Fourth DCA issued a written opinion affirming Petitioner's convictions and sentences on May 29, 2019, so his judgment became final on June 29, 2019 — thirty days later — when the period for seeking discretionary review with the Florida Supreme Court expired. *See* Fla. R. App. P. 9.120(b); *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (holding that "for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires"); *Cook v. Dixon*, No. 21-CV-14108-BB, 2022 WL 20582638, at *2 (S.D. Fla. Mar. 24, 2022) ("In Florida, if the appellate court affirms a conviction in a written or elaborated opinion, a petitioner may seek discretionary relief in the Florida Supreme Court. If discretionary review is not sought, the conviction becomes final when the 30-day period for seeking review in the Florida Supreme Court expires." (citation omitted)). Thus, absent any tolling, Petitioner had until June 29, 2020, to file his Petition.

### A. Statutory Tolling

The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In other words, the one-year clock continues to tick during any

gaps in the state post-conviction review process. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011). Here, the statute of limitations ran untolled for two years after Petitioner's judgment became final. Petitioner did not file his first post-conviction application — his Rule 3.850 motion — until June 24, 2021. Resp't Ex. 31, ECF No. [15-1] at 251–90. At that point, none of Petitioner's filings could toll the statute of limitations because it had expired. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (a post-conviction motion cannot toll the AEDPA's limitations period after it has expired). Thus, Petitioner is not entitled to statutory tolling.

### B. Equitable Tolling

The AEDPA's one-year limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court has established a two-part test for equitable tolling: the petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is, therefore, "an extraordinary remedy limited to rare and exceptional circumstances and typically applied sparingly." *Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473, 477 (11th Cir. 2014) (quotation and citation omitted). The Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008).

Petitioner claims he is entitled to equitable tolling, but his argument in fact pertains to the "actual innocence" exception to the statute of limitations, discussed below. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (distinguishing equitable tolling of the statute of limitations from the actual innocence *exception* to the statute of limitations). Petitioner has not shown that he

- 5 -

pursued his rights diligently and that an extraordinary circumstance stood in his way and prevented timely filing. Thus, he is not entitled to equitable tolling.

### C. Actual Innocence

A petitioner may overcome the statute of limitations by showing actual innocence. *Id*. If a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id*. at 395 (quoting *Schlup*, 513 U.S. at 329). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

For a claim of actual innocence to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. In assessing such evidence, "the district court is not bound by the rules of admissibility that would govern at trial[,]" and may "consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id*. at 327–28. "[A]lthough '[t]o be credible' a gateway claim requires 'new reliable evidence…', … the habeas court's analysis is not limited to such evidence." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup*, 513 U.S. at 324). "Based on th[e] total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (citing *Schlup*, 513 U.S. at 329).

>    **i.**    **Video in Support of Alibi Defense**

Petitioner alleges he is actually innocent. He relies primarily on a Facebook video that was excluded at trial, claiming it corroborates his alibi defense because it shows him walking in front of the stage at a nightclub at the time the burglary and shooting took place. ECF No. [22] at 5–8. At trial, Petitioner testified that he could not have committed the charged offenses because he was at a nightclub at the time to see his cousin perform. *See* Trial Tr., ECF No. [16-4] at 133–45. Petitioner's cousin and alibi witness, Marquis Turner, also testified that he was with Petitioner that night and that they left the club together. *See id.* at 156–57. At trial, just before Turner took the stand, defense counsel sought to admit the Facebook video to support Petitioner's alibi defense. *See id.* at 146–47. The trial court sustained the State's objection and excluded the video because the defense had not disclosed it until the last minute. *See id.* at 148:5–7. The trial court also noted that Petitioner was not identifiable in the video. *See id.*

On direct appeal, the Fourth DCA found the exclusion of this video to be harmless error. *Carn*, 273 So.3d at 42–43. The Fourth DCA explained that "[t]he video is a video of a video on someone's phone. The quality is poor at best. As the parties agreed, and is readily ascertainable from the video, no person is identifiable without explanation from the witness. Thus, the video offered no proof of an alibi on its own." *Id.* at 43. The Fourth DCA further noted that "[t]he person [Petitioner] claims is him is barely identifiable." *Id.* at 42 n.2.

Even if the video qualifies as new evidence, it is insufficient to support Petitioner's actual innocence gateway claim. Having reviewed the video, the Court agrees with the Fourth DCA's assessment that it does not clearly identify Petitioner, as Petitioner and his counsel both acknowledged at trial. Trial Tr., ECF No. [16-4] at 126-27, 136, 147. It is a blurry, five-minute-and-twenty-two-second video shot in a dark nightclub, and no individual walking in front of the stage is identifiable. Still, the video could have been helpful to Petitioner's alibi defense and could

have lent further credibility to Petitioner's alibi witness's testimony that Petitioner was at the night club with him. Petitioner argues that he could still be recognized in the video because he has "a rather distinctive haircut [a 'high-top fade'] and head shape that is apparent in the photo lineup and in the video as well." ECF No. [22] at 6. Through stills and close-ups, the video could have been used at trial to point out the similarity of Petitioner's head shape and haircut to assist in Petitioner's defense. Unlike in *Rozzelle*, where the Eleventh Circuit declined to reach the merits of the petitioner's constitutional claims because the evidence he presented "adds nothing to the accounts the jury already heard at trial," the video could have provided a more reliable corroboration of the alibi witness's testimony. *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1015, 1018 (11th Cir. 2012). Though the video was not date and time stamped, Trial Tr., ECF No. [16-4] at 147, it was uploaded on the day of the crime on Facebook, although exactly what time is unclear, ECF No. [16-6] at 4. However, as the Court discusses further below and absent further new evidence, the video is not "so significant and reliable that, considered with the trial record as a whole, it 'undermine[s] confidence in the result of the trial' such that 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Rozzelle*, 672 F.3d at 1017.

### ii.     Issues with Identification of Defendant

Further, Petitioner raises issues with his identification by the victim of the crime, which is the only piece of evidence connecting him to the crime. He points to statements from the victim that he argues indicate the victim's identification of Petitioner was "prompted by a third party" and "coerced" by the police. ECF No. [22] at 4–8. First, Petitioner explains that the victim identified him when looking at pictures on Facebook with his girlfriend's mother. As the victim testified at the suppression hearing:

And then [my girlfriend's mother] clicked on one picture and then she clicked on another one and I'm like "that's the guy right there." And she's like "that's the guy?" And I'm like "yeah, that's the guy right there." And she's like "do you know who this is?" I'm like "I think but I don't remember; I remember seeing him," and she's like "that's Monica's son." And I'm like "Monica's son?" I'm "no, he's not that -- he's not that old; he's not that big you know like that doesn't look like him. He looks older, he looks you know bigger. And uh - she's like "no, that's him, that's him. "And I'm like "oh," I'm thinking "well, yeah he's the one."

Suppression Hr'g Tr., ECF No. [16-3] at 33.

Second, Petitioner argues that on March 19, 2015, six days after the assault, two police officers came to his home and told the victim that Petitioner had threatened the victim's ex-girlfriend. *Id.* at 37. Later that day, police officers presented Petitioner with a line-up of photographs, out of which the victim picked Petitioner. Third, Petitioner argues the line-up was impermissibly suggestive. Petitioner's argument is the victim's identification is tainted so that it is unreliable.

First, the Court clarifies that those identification issues are not new evidence because they were presented at trial. *See Wilson v. Warden*, No. 15-14521-C, 2016 WL 11786419, at *4 (11th Cir. May 3, 2016) ("the alleged inconsistent trial testimony did not constitute new evidence for the purpose of [the petitioner's] actual-innocence claim because the testimony was already in existence and within [his] firsthand knowledge."). Petitioner points to the unreliability of the victim's identification, prompted by his girlfriend's mother and the police, and the purportedly suggestive photo lineup, but this evidence was presented to the jury. *See Saintilus v. Jones*, No. 15-CV-21987-CMA, 2016 WL 1403147, at *24 (S.D. Fla. Mar. 4, 2016), *adopted*, 2016 WL 1392294 (finding that "the challenge to the photo lineup does not demonstrate the existence of new evidence sufficient to support a claim of actual innocence"). The victim identified Petitioner in the photo lineup, and defense counsel thoroughly cross-examined the victim about the purportedly suggestive aspects of the photo lineup. *See* Trial Tr., ECF No. [16-4] at 26, 44–46; *see*

*also Saintilus*, 2016 WL 1403147 at *24 (finding that an allegedly suggestive photo lineup was not evidence of actual innocence where the victim "testified about the photographic procedures employed by the police and his identification of [the petitioner] as the perpetrator" and "[d]efense counsel ably cross-examined the victim . . . regarding his identification of [the petitioner]").

### iii.    Entirety of the Record in Light of the Video

The identification evidence is still relevant to the Court's inquiry. The Court must consider the entirety of the trial record when confronted with an actual innocence gateway claim: the "habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 327-28) (internal citation omitted). "Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. *See ibid.* If new evidence so requires, this may include consideration of the credibility of the witnesses presented at trial." *House*, 547 U.S. at 538–39.

Because the Fourth DCA did not make a determination of whether Defendant was actually innocent based on the evidence in the record, the Court does not defer to the facts in the state appellate court opinion as to Defendant's actual innocence gateway claim. *Contra Johnson v. Hooks*, 138 F. App'x 207, 208 (11th Cir. 2005) (a district court must "give deference to the facts set out in the state appellate court's opinion and presume them to be correct" unless petitioner proves them incorrect by clear and convincing evidence). Petitioner is correct to point to the weakness of the victim's identification testimony. The victim appeared to doubt his initial identification of Petitioner when Petitioner's Facebook photo was first presented to him by his girlfriend's mother. Suppression Hr'g Tr., ECF No. [16-3] at 33. The Facebook photo was not entered in evidence at the trial. ECF No. [16-4] at 13, 2025. The victim then renewed his

identification after police told him Petitioner had threatened his ex-girlfriend. Further, Petitioner's photograph in the lineup appeared to be the only picture with a white background compared to the other five photographs included and the line-up was presented to the victim in black-and-white. ECF No. [16-4] at 45, 203. Finally, as pointed out by defense counsel, the victim never mentioned the facial tattoos of Defendant when describing the man who attempted to rob him. ECF No. [16-4] at 199. The issues with this identification are noteworthy, given the paucity of other evidence connecting Defendant to the crime. Other than collecting bullets, no physical evidence — DNA or fingerprints — was collected at the crime scene. ECF No. [16-4] at 76-77, 86, 95. No physical evidence connected Defendant to the crime.

Still, even if the excluded video qualifies as new reliable evidence, considering all the evidence in the record, the Court cannot find that the entirety of the record establishes "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327. Petitioner's burden for an actual innocence claim at the gateway stage is high. The video on its own is not "so significant and reliable that, considered with the trial record as a whole, it 'undermine[s] confidence in the result of the trial' such that 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Rozzelle*, 672 at 1017 (citing *House*, 547 U.S. at 537). As the State pointed out during the trial, there is no date and time stamp on the video indicating when it was recorded. Trial Tr., ECF No. [16-4] at 147. Though it was uploaded to Facebook the day of the crime, there is no information on whether it was filmed simultaneously to its upload. ECF No. [16-4] at 147. Therefore, even if the video could have been enhanced to clearly identify Petitioner, it still would not have supported his alibi defense to the extent that it would demonstrate actual innocence. Further, Petitioner has failed to rebut by "clear and convincing evidence" the Fourth DCA's conclusion that the Facebook video's exclusion is harmless in light of the testimony of the alibi

witness, to which this Court must defer. *Carn v. State*, 273 So. 3d at 43; *see also* § 2254(e)(1);

*Johnson v. Hooks*, 138 F. App'x at 208.

### III.     EVIDENTIARY HEARING

Petitioner is not entitled to an evidentiary hearing because he has not alleged specific facts

that, if true, would entitle him to habeas relief. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740,

763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal

habeas relief, [Petitioner] is not entitled to an evidentiary hearing.").

### IV.     CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, **ECF No. [1]**, is

   **DISMISSED as time barred**.

2. A certificate of appealability is **DENIED** because Petitioner has failed to make a

   substantial showing of the denial of a constitutional right. *See* § 2253(c)(2); *Slack v.*

   *McDaniel,* 529 U.S. 473, 484–85 (2000).

3. The Clerk is directed to **CLOSE** this case and mail a copy of this Order to Petitioner

   at the address of record.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all

   pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 24, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Case No. 24-cv-80397-BLOOM

Counsel of Record

Martavious Carn, *PRO SE*
B15638
Cross City Correctional Institution
Inmate Mail/Parcels
568 NE 255th Street
Cross City, FL 32628